1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**JENNY L. FOLEY, Ph.D., ESQ.**
Nevada Bar No. 9017
E-mail: jfoley@hkm.com
**HKM EMPLOYMENT ATTORNEYS LLP**
1785 East Sahara, Suite 300
Las Vegas, Nevada 89104
Tel: (702) 805-8340
Fax: (702) 805-8340
*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| ARTHURO MEHRETU, an Individual,<br><br>Plaintiff,<br><br>vs.<br><br>SOUTHERN NEVADA HEALTH DISTRICT, a Political Subdivision of the State of Nevada,<br><br>Defendant. | **CASE NO.:**<br><br>**COMPLAINT AND JURY DEMAND** |

The Plaintiff Arthuro Mehretu ("**Mr. Mehretu**" or "**Plaintiff**") by and through his attorneys, Jenny L. Foley, Ph.D., Esq. of HKM Employment Attorneys LLP, hereby complain and allege as follows:

### JURISDICTION

1.      This is an action for damages brought by Plaintiff for unlawful workplace discrimination and retaliation based on race under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e et seq., and Nevada Revised Statute §613.330 et seq; for monetary damages to redress the deprivation of rights secured to the Plaintiff by the Civil Rights Act of 1871, 42 U.S.C. § 1981; and for certain claims brought pursuant to the Nevada Revised Statutes as outlined below.

2.      This Court has primary jurisdiction over claims set forth herein pursuant to 28

U.S.C. § 1331 (federal question), 28 U.S.C. §1343(a) (4) (civil rights action) and 42 U.S.C. §2000e-5(f)(3) (unlawful discrimination and retaliation in employment). Additionally, this Court has supplemental jurisdiction over any state law claims pled herein pursuant to 28 U.S.C. § 1367.

3.      All material allegations contained in this Complaint are believed to have occurred in Clark County, Nevada. Therefore, venue properly lies in the southern division of the United States Court for the District of Nevada pursuant to 28 U.S.C. §1391(b)(2).

## EXHAUSTION OF ADMINISTRATIVE REMEDY

4.      On or about April 5, 2021, Plaintiff initiated the process of filing a Charge of Discrimination against his employer, the Defendant named in this action with the Nevada Equal Rights Commission wherein he alleged discrimination based on race, age, sex, and retaliation.

5.      On or about August 9, 2021, Plaintiff received his Notice of Right to Sue from the EEOC.

6.      This action is timely filed pursuant to 42 U.S.C. § 2000e-5(f).

7.      Plaintiff has exhausted his administrative remedy on all claims pled hereunder prior to filing this action with this Court.

## GENERAL ALLEGATIONS

8.      Plaintiff incorporates all of the allegations in the preceding paragraphs as though fully set forth herein.

9.      Plaintiff is a United States citizen and current resident of Clark County, Nevada.

10.     Defendant SOUTHERN NEVADA HEALTH DISTRICT (hereinafter "**SNHD**" or "**Defendant**") is a political subdivision of the State of Nevada company and an employer in the State of Nevada.

11.     At all times relevant to this matter, Defendant had over 50 employees, and is therefore subject to the provisions of Title VII.

12.     Plaintiff is an African American male.

13.     Plaintiff began working for the SNHD on or about November 2010 in the office of HIV/AIDS/STD, which later became the Office of Epidemiology and Disease Surveillance

(OEDS).

14.     Plaintiff began as a Disease Investigation and Intervention Specialist before being promoted to Communicable Diseases Supervisor in 2015, which is a management and leadership role.

15.     Not long thereafter, in 2015, Plaintiff identified data distorting practices in the HIV surveillance system.

16.     Plaintiff reported the issue to the program's leadership, but they were resistant and disregarded Plaintiff's report.

17.     The issue was only rectified after Plaintiff reported the issue to the Chief Health Officer.

18.     Following this first report, Plaintiff began feeling as if SNHD was pushing him out of his supervisory role and/or attempting to terminate him entirely.

19.     In 2017, Plaintiff was laterally transferred to the position of Epidemiology Project Surveillance Coordinator after pressure from several managers.

20.     In 2018, Plaintiff reported several issues concerning SNHD's epidemiology and disease surveillance practices as well as reported practices by the Community Health Division and Human Resources that resulted in HIPAA violations.

21.     Plaintiff explained that he had received information concerning possible "ghost cases" in the HIV system, which raised concerns of the manipulation and falsification of data.

22.     Plaintiff also raised the issue of the systematic exclusion of staff, which in turn was leading to the creation of a hostile work environment, research misconduct, systemic bias, and harassment.   Once again, Plaintiff reported these issues to Mahlet Gizaw in Human Resources in approximately December of 2018.

23.     In reporting these issues, Plaintiff became a whistleblower under Nevada and Federal law.

24.     Following the claimed reports of these ghost cases and their related impacts and consequences, Plaintiff informed the program manager that he was starting an investigation into the issues he just reported.

25.     On or about January of 2019, Plaintiff was then directed by Marlo Tonge, a fellow OEDS's personnel and Plaintiff's manager, to stop all investigations.

26.     After Plaintiff reported Ms. Tonge's directive to stop all investigations to Human Resources, Angela Lewis from HR then advised Plaintiff to file for whistleblower retaliation.

27.     Plaintiff did as SNHD instructed and filed several formal reports to HR in April 2019.

28.     Plaintiff's allegations of improper practices were substantiated.

29.     As a result of his complaints, upon information and belief, the head of the SNHD resigned as there was severe public backlash.

30.     Thereafter, Defendant attempted to blame the public backlash on Plaintiff and tried to terminate Plaintiff for filing his complaints which led the backlash.

31.     In September 2019, a meeting between Plaintiff and Michael Johnson, the Director of Community Health, was scheduled to occur to discuss Plaintiff's whistleblowing complaints and whether Plaintiff was going to be terminated as a result of the complaints.

32.     However, this meeting never occurred because, upon information and belief, Mr. Johnson cancelled the meeting due to media backlash.

33.     Upon information and belief, Plaintiff was informed by a union steward that had that meeting occurred, Plaintiff was going to be terminated for his whistleblowing complaints.

34.     Although Plaintiff was not immediately terminated, Defendant continued to retaliate against Plaintiff.

35.     One such example occurred shortly after Mr. Johnson canceled their meeting, but demanded that Plaintiff come up with detailed findings within 24 hours of the investigation into the ghost cases.

36.     Not only was that a severely limited amount of time to investigate such a serious and robust issue, but it is also an investigation that Plaintiff had been previously told to stop conducting by Ms. Tonge.

37.     Accordingly, after Mr. Johnson's impossible request, Plaintiff filed another

1    whistleblower retaliation complaint with HR.

2          38.    In addition, after this complaint, Plaintiff was placed on paid administrative

3    leave from October 28, 2019, through February 24, 2020.

4          39.    The reason Plaintiff was given for being placed on leave was allegedly because

5    he was being insubordinate, however, no details of the alleged insubordination were provided.

6          40.    Moreover, upon information and belief, Defendant later claimed that he was

7    placed on leave so that an investigation could occur without him.

8          41.    Defendant called Plaintiff back to work on February 24, 2020, and told him that

9    the investigation into the ghost cases had been resolved.

10         42.    Upon his return, Plaintiff was also introduced to Kelli Watkins, a new

11   Epidemiology Supervisor.

12         43.    Plaintiff found this odd as the position had not only been vacant for years, but

13   the job description for Epidemiology Supervisor mirrored his own job description.

14         44.    Shortly thereafter, in March of 2020, Plaintiff filed a written complaint with Mr.

15   Gizaw in HR about the ongoing retaliation, specifically stating that this time that he was being

16   denied the opportunity to apply for a supervisor position, a position he was clearly qualified for

17   as the job matched his current position identically.

18         45.    In addition, Plaintiff also reported that this new position created a conflict in the

19   workflow as the two positions mirrored each other.

20         46.    Moreover, Ms. Watkins informed Plaintiff that he was not permitted to access

21   "anything" in the district unless given a specific directive by her to do so.

22         47.    By design, this created a hostile work environment and denied Plaintiff the

23   opportunity for meaningful work.

24         48.    In March 2020, Plaintiff reported the lack of meaningful work as a form of

25   retaliation to HR.

26         49.    In further retaliation, Plaintiff was reassigned to a fulltime COVID-19 contact

27   tracer position.

28         50.    The work of a full time COVID-19 contact tracer requires no particular skill set

1    and the only educational requirement is a high school diploma or GED.

2          51.    In contrast, Plaintiff has Master of Public Health in Epidemiology and

3    Biostatistics, which made him obnoxiously overqualified to act as a COVID-19 tracer.

4          52.    This is particularly egregious given the extraordinary strain on the department

5    given the COVID-19 pandemic, such that failing to use Plaintiff's superior skills, knowledge

6    and experience amounts to yet another departmental failure to adequately protect or inform the

7    public of ongoing public health threats.

8          53.    Plaintiff was also the only person at his pay grade and seniority who was given

9    no meaningful work, who was only left to make tracing phone calls.

10         54.    In August 2020, Plaintiff received an informal "Demobilization from

11   Emergency Operations" notice from Ms. Watkins, which directed him to return back to his

12   "regular activities."

13         55.    However, not only had Defendant directed Plaintiff to only conduct work at Ms.

14   Watkins specific direction, but also the specific direction given to Plaintiff by Ms. Watkins had

15   nothing to do with his regular duties.

16         56.    Following the notice, Plaintiff reported to HR the ongoing retaliation of not

17   being given any meaningful work and/or not being given work within his job description.

18         57.    As such, Plaintiff specifically inquired about his position, job description, and

19   work responsibilities.

20         58.    Plaintiff candidly asked if his role and reporting duties had changed since he was

21   being assigned tasks that fell outside of his regular duties, such as data entry.

22         59.    Plaintiff also requested this information because, as he specifically reported, he

23   was reporting to his manager and the division director, but his directives were now coming from

24   a "supervisor" who was in the same pay grade and role as the coordinator.

25         60.    Despite Plaintiff's reasonable requests, HR refused to answer his requests and

26   instead placed Plaintiff on administrative leave for a second time, allegedly for

27   "insubordination" but still not providing any details.

28         61.    Defendant terminated Plaintiff on or about December 18, 2020.

62.     When Defendant terminated Plaintiff, Plaintiff had open claims for retaliation that were never addressed.

63.     Moreover, upon information and belief, at the time of Plaintiff's termination, there was an open investigation into the Human Resources Director, Amy Hagen, and her staff regarding allegations of abuse of HR relations and for failing to take action to address racial profiling issues.

## FIRST CAUSE OF ACTION

### (Discrimination Based on Race in violation of State and Federal Statutes)

64.     Plaintiff incorporates all of the allegations in the preceding paragraphs as though fully set forth herein.

65.     Plaintiff is a member of the class of persons protected by state and federal statutes prohibiting discrimination based on race.

66.     Defendant as an employer is subject to Nevada and federal statutes prohibiting discrimination, NRS 613.330 et. seq. and Title VII, 42 U.S.C. § 2000e et. seq. as amended and thus, has a legal obligation to provide Plaintiff with a work environment free from discrimination and harassment.

67.     Defendant refused to take reasonably adequate steps to prevent discrimination against Plaintiff as he was being subjected to constant harassment on the basis of his race for discovering discriminatory practices and bringing them to light.

68.     Plaintiff endured a series of discriminatory acts carried out by Defendant, the chief example being that Plaintiff was a member of the class of individuals who were being directly affected by Defendant's systemic biased practices and his complaints were of the improper conduct were disregarded by Defendant.

69.     Plaintiff reported this discriminatory act, as well as countless others, but Defendant never addressed the complaints.

70.     No other similarly situated persons, not of Plaintiff's protected class were subject to the same or substantially similar conduct.

71.     Plaintiff suffered adverse economic impact due to Defendant's discriminatory

behavior and termination.

72.     Plaintiff was embarrassed, humiliated, angered and discouraged by the discriminatory actions taken against him.

73.     Plaintiff suffered compensable emotional and physical harm, including but not limited to, headaches, sleeplessness, anxiety and depression resulting from this unlawful discrimination by his employer.

74.     Plaintiff is entitled to be fully compensated for his emotional disturbance by being forced to endure this discrimination.

75.     Pursuant to 1991 Amendments to Title VII, Plaintiff is entitled to recover punitive damages for Defendant's intentional repeated violations of federal and state civil rights laws.

76.     Plaintiff suffered damages in an amount deemed sufficient by the jury.

77.     Plaintiff is entitled to an award of reasonable attorney's fees.

78.     Defendant is guilty of oppression, fraud or malice, express or implied as Defendant knowingly and intentionally discriminated against Plaintiff because of his race and disability.

79.     Therefore, Plaintiff is entitled to recover damages for the sake of example, to deter other employers from engaging in such conduct and by way of punishing the Defendant in an amount deemed sufficient by the jury.

## SECOND CAUSE OF ACTION

### (Retaliation Based on Race in violation of State and Federal Statutes)

80.     Plaintiff incorporates all of the allegations in the preceding paragraphs as though fully set forth herein.

81.     In violation of 42 U.S.C § 200e-3 and NRS 613.340, Defendant retaliated against Plaintiff after he complained of acts which he reasonably believed were discriminatory.

82.     Plaintiff complained of race discrimination and retaliation to management and to Defendant's Human Resources Department on countless occasions, but Plaintiff was only met with more retaliation after making such complaints.

83.     Defendant subjected Plaintiff to a series of retaliatory actions, including, but not limited to, changing his job responsibilities and work duties without formal notice or his consent, reassigning him to a different position, not assigning him any meaningful work, and then ultimately terminating him.

84.     There may be more detrimental acts of which Plaintiff is unaware which may also constitute retaliation in that it harmed Plaintiff.

85.     The actions and conduct by Defendant constitute illegal retaliation which is prohibited by federal and state statutes.

86.     Plaintiff suffered damages in an amount deemed sufficient by the jury.

87.     Plaintiff is entitled to an award of reasonable attorney's fees.

88.     Defendant is guilty of oppression, fraud or malice, express or implied because Defendant knowingly and intentionally retaliated against Plaintiff because he submitted a complaint of racial discrimination with the general manager.

89.     Therefore, Plaintiff is entitled to recover damages for the sake of example, to deter other employers from engaging in such conduct and by way of punishing the Defendant in an amount deemed sufficient by the jury.

### THIRD CAUSE OF ACTION

### (Violation of the Civil Rights Act of 1871, §1981)

90.     Plaintiff incorporates all of the allegations in the preceding paragraphs as though fully set forth herein.

91.     Plaintiff is African American and therefore a member of a protected class.

92.     Defendant engaged in the above-mentioned harassment and discrimination of Plaintiff with the purposeful intent to discriminate against his because of his race (African American).

93.     Under similar circumstances, other, white or non-African American employees were not subjected to a racially hostile working environment.

94.     Plaintiff was subject to disparate treatment and retaliation through adverse employment actions, and favorable behavior toward white employees, which is prima facie

evidence of purposeful intent to discriminate against Plaintiff because of his race.

95.     Plaintiff suffered damages in an amount deemed sufficient by the jury.

96.     Plaintiff is entitled to an award of reasonable attorney's fees in this matter.

97.     Defendant is guilty of oppression, fraud or malice, express or implied as Defendant knowingly violated Plaintiff's rights under Section 1981 of the Civil Rights Act of 1871.

98.     Therefore, Plaintiff is entitled to recover damages for the sake of example, to deter other employers from engaging in such conduct and by way of punishing the Defendant in an amount deemed sufficient by the jury.

## FOURTH CAUSE OF ACTION

### (Intentional/Negligent Infliction of Emotional Distress)

99.     Plaintiff incorporates all of the allegations in the preceding paragraphs as though fully set forth herein.

100.    Defendant's conduct toward Plaintiff was extreme, outrageous, and caused significant emotional harm, headaches, sleeplessness and various physical and mental distress.

101.    Defendant's conduct was extreme, outrageous, and undertaken with either intent or, reckless disregard for causing Plaintiff emotional distress.

102.    Defendant had a duty to refrain from engaging in the hostile and retaliatory acts as described above.

103.    Defendant breached that duty.

104.    Defendant's intentional or negligent conduct was the legal, actual, proximate cause of Plaintiff's extreme and/or severe emotional distress by engaging in the conduct described herein.

105.    Defendant must pay damages in an amount to be determined at trial but exceeding $25,000 for emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of life because they engaged in illegal actions.

106.    Because Defendant is guilty of oppression, fraud or malice, express or implied, Defendant must pay Plaintiff an additional amount for the sake of example and by way of

1   punishment.

2   107.   Plaintiff has had to obtain the services of an attorney to protect his rights and

3   secure compensation for the damages incurred as a result of these violations and therefore, he

4   is entitled to recover reasonable attorney's fees against Defendant.

5   **FIFTH CAUSE OF ACTION**

6   **(Wrongful Termination in Violation of Public Policy - Whistleblower)**

7   108.   Plaintiff incorporates all of the allegations in the preceding paragraphs as though

8   fully set forth herein.

9   109.   Whistleblowing activity, which serves a public purpose, is protected. So long as

10   employee's actions are not merely private or proprietary, but instead seek to further the public

11   good, the decision to expose illegal of unsafe practices should be encourage. *Allum v. Valley*

12   *Bank of Nevada*, 114 Nev. 1313, 970 P.2d 1062 (1998).

13   110.   Plaintiff made a whistleblowers complaint regarding the above-mentioned

14   improper conduct and afterward was subject to retaliatory treatment at the hands of Defendant

15   including Plaintiff being pressured to switch positions, Plaintiff not being given any meaningful

16   work, and Plaintiff's termination.

17   111.   In addition, meetings were held specifically to address what to do in response to

18   Plaintiff's whistleblower complaint., which resulted in Plaintiff's termination.

19   112.   Plaintiff has been seriously harmed, economically and emotionally, by this

20   wrongful termination and are entitled to be fully compensated therefor.

21   113.   Plaintiff had to engage in the services of attorneys for representation in this

22   matter and are entitled to an award of reasonable attorney's fees.

23   **WHEREFORE,** Plaintiff prays this court for:

24   a.   A jury trial on all appropriate claims;

25   moreover, to enter judgment in favor of the Plaintiff by:

26   b.   Awarding Plaintiff an amount sufficient to fully compensate his (including tax

27   consequences) for all economic losses of any kind, and otherwise make his

28   whole in accordance with Title VII, the Civil Rights Act of 1871, §1981, and

1     certain claims brought pursuant to the Nevada Revised Statutes and common

2     law;

3     c.   General damages;

4     d.   Special damages;

5     e.   An award of compensatory and punitive damages to be determined at trial;

6     f.   Pre- and post-judgment interest;

7     g.   An award of attorney's fees and costs; and

8     h.   Any other relief the court deems just and proper.

9     Dated this 2nd Day of November, 2021.

10                                      **HKM EMPLOYMENT ATTORNEYS, LLP**

11                                      */s/ Jenny L. Foley*
                                        **JENNY L. FOLEY, Ph.D., Esq.**
12                                      Nevada Bar No. 9017
                                        1785 East Sahara, Suite 300
13                                      Las Vegas, Nevada 89104
                                        Tel: (702) 805-8340
14                                      Fax: (702) 805-8340
                                        E-mail: jfoley@hkm.com
15                                      *Attorney for Plaintiff*

16

17

18

19

20

21

22

23

24

25

26

27

28