UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Arthuro Mehretu, | Case No. 2:21-cv-02004-CDS-NJK |
| Plaintiff | |
| v. | **Order Granting Motion to Compel Arbitration and Stay Litigation** |
| Southern Nevada Health District, | (ECF No. 11) |
| Defendant. | |

Pending before the Court is Southern Nevada Health District's ("SNHD") Motion to Compel Arbitration ("Motion") which was filed on March 14, 2022. ECF No. 11. SNHD contends both parties consented to a binding arbitration provision as part of an employment contract, which SNHD now seeks to enforce. Plaintiff Arthuro Mehretu ("Mehretu") filed an opposition to the motion on March 25, 2022, ECF No. 13, arguing that the Motion should be denied because the arbitration clause is unconscionable, and because the subject matter of this litigation is a matter of public concern. SNHD's reply was timely filed on March 30, 2022. ECF No. 14. This matter was administratively reassigned to me on May 17, 2022. ECF No. 23. Having considered the moving papers and relevant law, I grant the motion to compel arbitration and stay this case.

I.  Relevant Facts

Plaintiff Mehretu filed a complaint on November 4, 2021, alleging five causes of action, all of which relate to his employment with Southern Nevada Health District. He alleges unlawful workplace discrimination and retaliation based on race under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.*, and Nevada Revised Statute § 613.330 *et seq*; the deprivation of

rights secured by the Civil Rights Act of 1871, 42 U.S.C. § 1981; intentional infliction of emotional distress; and wrongful termination in violation of public policy. *See generally* ECF No. 1.

In response to Mehretu's suit, the SNHD filed a motion to dismiss (ECF No. 8), which was withdrawn (ECF No. 12) after they filed the instant motion to compel arbitration. ECF No. 11. As set forth in the motion to compel, on November 29, 2010, during the onboarding process as a new employee, Mehretu signed an *Acknowledgement of Receipt and Arbitration Agreement* ("the Agreement") stating in part: "I also acknowledge that the District utilizes a system of alternative dispute resolution that involves binding arbitration to resolve all disputes that may arise of out of the employment context." ECF No. 11-1. The Agreement further states that:

> both the District and I **agree that any claim, dispute, and/or controversy (including, but not limited to, any claims of discrimination and harassment**, whether they based on the Nevada Fair Employment Practices Act, Title VII of the Civil Rights Act of 1964, as amended, as well as all other state and federal laws or regulations) ... shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act...

*Id.* (emphasis added)

SNHD argues that the Agreement is a valid and binding contract, and the dispute between the parties unquestionably arises from and relates to Mehretu's employment with SNHD (ECF No. 11 at 5), therefore Mehretu's claims are arbitrable under the Agreement. SNHD also alleges that because the Agreement allows Mehretu to pursue, and SNHD to defend, all claims in arbitration, the arbitral forum is adequate. *Id.*

Mehretu opposed the motion, contending that the Agreement is procedurally unconscionable as it was placed at the end of Defendant's extensive Personnel Code (ECF No. 13 at 4) thereby making it unlikely that Mehretu understood the gravity of the contract. *Id.* at 5. He also argues that the Agreement is substantively unconscionable because it was not only an agreement to binding arbitration, but also an acknowledgement that Mehretu had received the

Personnel Code. *Id.* Mehretu contends that the fact that he was voluntarily relinquishing his rights to seek relief from the Courts is not clear. *Id.*

Lastly, Mehretu argue that the Agreement should be invalidated based on the public interest in his employment dispute. "Compelling this matter into arbitration would effectively ensure that the public would never learn the outcome of this matter," Mehretu argues, thereby giving SNHD "the opportunity to hide its shocking behavior from the community it serves." *Id.* at 6.

SNHD replied that Mehretu cannot meet his burden to demonstrate either procedural or substantive unconscionability, and thus, this Court should enforce the employment agreement and arbitration clause. ECF No. 14 at 3 (citing *Burch v. Second Jud. Dist. Ct. of State ex rel. Cty. of Washoe*, 118 Nev. 438, 443 (2002); *D.R. Horton, Inc. v. Green*, 120 Nev. 549, 553-54 (2004), *overruled on other grounds by U.S. Home Corp. v. Michael Ballesteros Tr.*, 134 Nev. 180, 192 (2018); *Andrus v. D.R. Horton, Inc.*, 2012 WL 5989646, at *7 (D. Nev. Nov. 5, 2012) *report and recommendation adopted*, 2012 WL 5989642 (D. Nev. Nov. 29, 2012)). In response to Mehretu's public interest argument, SNHD contends that the public's interest in the employment dispute does not outweigh enforceability of a binding arbitration agreement. *Id.* at 7-8.

## II. Legal Framework

The Federal Arbitration Act ("FAA"), which governs the enforceability of arbitration agreements in contracts, was enacted by Congress in 1925 to address the perception that courts were hostile to arbitration. 9 U.S.C. § 1, *et seq.*; *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018). The FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has held that the "fundamental principle" of arbitration is application of

3

contract rules. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citing *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010)).

In deciding whether to compel arbitration, the court may not review the merits of the dispute; rather, the court's role under the FAA is limited to "determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213, 1217 (9th Cir. 2008) (citing *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000); *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008)). If the Court determines that both questions are answered in the affirmative, the Court must compel arbitration. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

In determining the validity of an arbitration agreement, the Court applies state law contract principles. *Adams*, 279 F.3d at 892; *see also* 9 U.S.C. § 2. To be valid, an arbitration agreement must be in writing, but it need not be signed by the party to whom it applies as acceptance may be implied in fact. *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev.*, 55 Cal. 4th 233, 236 (2012). Further, "[a]n arbitration clause within a contract may be binding on a party even if the party never actually read the clause." *Id.*

The standard for demonstrating arbitrability is not high and enforcement of arbitration agreements are rigorously enforced. *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999). The FAA "establishes a federal policy favoring arbitration, requiring that [courts] rigorously enforce agreements to arbitrate," *see Shearson/Am. Exp. Inc. v. McMahon*, 482 U.S. 220, 226 (1987), and provides that if a "contract contains an arbitration clause, there is a presumption of arbitrability." *Comedy Club, Inc. v. Improv West Assocs.*, 553 F.3d 1277, 1284 (9th Cir. 2009) (quoting *AT&T Techs, Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)) (internal quotation marks omitted). "By its terms, the Act 'leaves no place for the exercise of discretion by a district court,

but instead mandates that district courts direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting *Dean Witter Reynolds*, 470 U.S. at 218).

It is "well settled that [if] the [arbitrability] dispute at issue concerns contract formation, the dispute is generally for courts to decide." *Granite Rock Co. v. Int'l Broth. of Teamsters*, 561 U.S. 287, 296 (2010).

### III.   Argument

Mehretu does not argue that he never read or saw the Agreement, or that he did not freely sign it. Furthermore, Mehretu does not claim he entered into the Agreement unknowingly or by mistake. Rather, Mehretu attacks the validity of the agreement by contending that it is procedurally and substantively unconscionable and that it is void because the arbitration provision was "not presented to him as a stand-alone contract" and "because it was not only an agreement to binding arbitration, but also an acknowledgement that the Plaintiff had received the Personnel Code." ECF No. 13 at 5

   *a.   The Arbitration Agreement is Valid*

"Generally, both procedural and substantive unconscionability must be present in order for a court to exercise its discretion to refuse to enforce a clause as unconscionable." *D.R. Horton v. Green*, 96 P.3d 1159, 1162 (Nev. 2004) (quoting *Burch v. Dist. Ct.*, 49 P.3d 647, 650 (Nev. 2002)). Procedural unconscionability refers to a party's unequal bargaining power and misunderstanding of the provision's effects. *D.R. Horton, Inc.*, 96 P.3d at 1162. Substantive unconscionability focuses on whether an agreement's terms are one-sided or bilateral. *Id.* at 1162–63.

. . .

                *i.*      *The Agreement is Not Procedurally Unconscionable*

"An arbitration clause is procedurally unconscionable when a party has no 'meaningful opportunity to agree to the clause terms either because of unequal bargaining power, as in an adhesion contract, or because the clause and its effects are not readily ascertainable upon a review of the contract.'" *Gonski v. Second Jud. Dist. Ct.*, 245 P.3d 1164, 1169 (Nev. 2010). To avoid procedural unconscionability, an arbitration provision must be conspicuous and put the signer on notice that they are giving up important legal rights. *Id.* at 1170. Misleading or complicated language can suggest procedural unconscionability. *Id.* at 1169. And a party's ability to negotiate the terms of an agreement factors into a procedural-unconscionability review. *Id.* at 1162.

For example, in *Gonski*, the Nevada Supreme Court found an arbitration clause procedurally unconscionable because it was typed in normal-sized font and found on page 15 of an 18-page agreement "in the midst of identically formatted paragraphs, even though" other provisions were "called out through the use of all capital letters." *Id.* at 1170. And although the signatories initialed the bottom of the page containing the arbitration provision, "nothing drew their attention to the importance of what those pages contained." *Id.*

Mehretu argues that because the Agreement was presented at the end of the Personnel Code, along with its acknowledgment of receipt, and consisted mainly of large block text, the arbitration agreement and its effects were not readily ascertainable upon a review of the contract. ECF No. 13 at 4-5.

Here, the bulk of the language in the *Acknowledgement of Receipt and Arbitration Agreement* is dedicated to the terms and conditions of the arbitration agreement, while a mere four lines acknowledge receipt of the Personnel Code. *See generally* ECF No. 11-1. Although the arbitration paragraphs are typed in the same size and style font as the acknowledgement of receipt, the conclusion of the Agreement is not inconspicuous. In fact, it read in boldface capital letters:

I UNDERSTAND THAT BY VOLUNTARILY AGREEING TO THIS BINDING ARBITRATION PROVISION, BOTH I AND THE DISTRICT GIVE UP OUR RIGHTS TO TRIAL BY JURY OF ANY CLAIM I OR THE DISTRICT MAY HAVE AGAINST EACH OTHER.

DO NOT SIGN UNTIL YOU HAVE READ THE ABOVE STATEMENT AND ARBITRATION AGREEMENT.

ECF No. 11-1.

These are the only statements in the agreement that are written in all capital letters, causing them to stand out from the other provisions. Mehretu's signature acknowledged he read the statements and agreed to the binding arbitration of employment disputes. Moreover, as noted by SNHD, the Agreement states that Mehretu acknowledges that he has "received a copy of the Personnel Code and understand that it sets forth the terms and conditions of [his] employment as well as rights, duties, responsibilities and obligations of employment with the District. [He] understand and agree that it is [his] responsibility to read and familiarize myself with the provisions of this manual and any and all subsequent revisions that shall be equally binding as terms and conditions of employment," *id*, not that he was expected or required to read the entirety of the Code before signing the Code.

Thus, Mehretu's agreement is distinguishable from the one in *Gonski* because: (1) the arbitration provision stands out from the other terms of the agreement; (2) the agreement contains explicit language detailing what rights he was giving up; and (3) both the form and substance of the agreement demonstrate that the contract was not one of adhesion, but of choice, and Mehretu freely elected arbitration. Accordingly, I do not find that this agreement is procedurally unconscionable.

        *ii.*      *The Agreement is not Substantively Unconscionable*

Substantive unconscionability refers to an agreement's one-sidedness. *D.R. Horton, Inc.*, 96 P.3d at 1162–63. Mehretu argues that the function of this contract was not only to bind him to

arbitration, but it also served as a means in which to acknowledge that he had received a copy of Defendant's Personnel Code. ECF No. 13 at 5. The fact that he was voluntarily relinquishing his rights to seek relief from the Courts, as well as confirming that he had received Defendant's Personnel Code is not clear. *Id.*

Mehretu also argues that the agreement is substantively unconscionable because it may force an employee to bear some of the cost of mediation and arbitration. He contends there is no indication of which provider will conduct the arbitration and there is no indication of who will be responsible to pay for the fees associated with the arbitration process. *Id.*

Mehretu does not cite to a case or any other authority supporting his assertion that signing an arbitration agreement along with other onboarding requirements somehow voids or mitigates his agreement to arbitrate. There is no statutory language requiring that an arbitration agreement be a standalone document. Rather, NRS 597.995 states that "an agreement which includes a provision which requires a person to submit to arbitration any dispute arising between the parties to the agreement must include specific authorization for the provision which indicates that the person has affirmatively agreed to the provision." Nev. Rev. Stat. § 597.995 (2013).

While this Court acknowledges the Agreement's silence regarding arbitration costs, that alone does not render the Agreement unenforceable. The Nevada Supreme Court held that [an] agreement was not unenforceable on the ground that the "risk" of prohibitive costs was "too speculative" to justify invalidation of the arbitration agreement. *Green Tree Financial Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000). Furthermore, the Court acknowledges that "an arbitration agreement's silence regarding potentially significant arbitration costs does not, alone, render the agreement enforceable," it explained that "'the existence of large arbitration costs could preclude a litigant from effectively vindicating her rights in the arbitral forum." *D.R. Horton*, 96 P.3d at 1165

(quoting *Green Tree*, 531 U.S. at 90). Thus, when "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Green Tree*, 531 U.S. at 92. Mehretu has not met this burden. Instead he merely argues that Agreement's silence regarding arbitration costs alone is sufficient for this Court to render the agreement unenforceable.

Ultimately, Mehretu offers no true support for his position that the Agreement's terms are themselves one-sided. I therefore find that the agreement is not substantively unconscionable.

### iii.   *The Public Interest Does Not Require this Court to Refuse to Enforce the Agreement*

Mehretu maintains that compelling arbitration would effectively ensure that the public would never learn the outcome of this matter. ECF No. 13 at 6. SNHD argues that the underlying of the case before this Court is a private employment dispute between private parties and not a matter of significant public interest. The Court agrees that some disputes between private parties can be issues in the public interest, however, by his own admissions, the public is already aware of the allegations of improper practices "as there was severe public backlash." ECF No. 1 at ¶¶28-29, ECF No. 13 at 6. Taking all his arguments together, Mehretu has not shown that his case is one of rare or exceptional circumstance for which public-interest consideration requires the Court to override the arbitration agreement.

### b.   *The Agreement Encompasses the Dispute at Issue*

Having found that the arbitration agreement is valid, the second prong of the district court's role under FAA is to determine whether the agreement encompasses the dispute at issue. *Chiron Corp.*, 207 F.3d at 1130. Neither party contends that the arbitration agreement does not encompass the disputes in the complaint. Mehretu's complaint sets forth claims of unlawful workplace discrimination and retaliation based on race under Title VII of the Civil Rights Act of

1964. ECF No. 1. The Agreement specifically includes as arbitrable "any claims of discrimination and harassment, whether they be based on the Nevada Fair Employment Practices Act, Title VII of the Civil Rights Act of 1964, as amended, as well as all other state and federal laws or regulations…" ECF No. 11-1. Based on the plain text of the Agreement, the Court determines that the claims are encompassed by the *Arbitration Agreement*.

### IV. Conclusion

Finally, having determined that the Agreement is binding, and that Mehretu's claims are arbitrable and, therefore, *must* be submitted to arbitration, the Court turns to the question of staying or dismissing Mehretu's action. The Ninth Circuit has held that, "notwithstanding the language of § 3 [of the FAA], a district court may either stay the action or dismiss it outright when, as here, the court determines that all of the claims raised in the action are subject to arbitration." *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1073-74 (9th Cir. 2014). Having considered that both parties ask that I stay this action pending the outcome of the arbitration, the Court concludes that it is appropriate to grant the request to stay pending arbitration.

IT IS THEREFORE ORDERED that Defendant Southern Nevada Health District's Motion to Compel Arbitration (ECF No. 11) is **GRANTED**.

THE COURT FURTHER ORDERS that the parties shall promptly submit this matter to binding arbitration in accordance with the Acknowledgment of Receipt and Arbitration Agreement (ECF No. 11-1); and that this matter shall henceforth proceed by arbitration.

IT IS FURTHER ORDERED that this case is STAYED pending the outcome of the binding arbitration proceedings.

IT IS FURTHER ORDERED that the parties shall file a joint status report within thirty (30) days of the resolution of the binding arbitration proceedings. If more than 75 days passes

before the arbitration takes place, the parties shall file a joint status report detailing when arbitration will occur.

All pretrial deadlines and hearing dates are hereby VACATED.

IT IS SO ORDERED.

DATED this August 12, 2022.

_____
Cristina D. Silva
United States District Judge